UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| Joe E. Doe and Jack L. Doe | ) | |
| by their next friend Mary Doe, and | ) | Case No.:  5:11 – CV - 225 |
| Mary Doe | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Lamoille South Supervisory Union | ) | |
| School District and Morristown | ) | |
| School District | ) | |

**AMENDED COMPLAINT**

This is an action for money damages on account of a deprivation of the plaintiffs' rights under 20 U.S.C. §1681, et. seq. (Title IX of The Education Amendments of 1972).  This court has jurisdiction under 28 U.S.C. §1343 and 42 U.S.C. §1983.

There are pendant state claims alleging negligence and violation of the Vermont Public Accommodations Act which arise out of a nucleus of common facts.

**I.    FACTS**

1.   The plaintiffs Joe E. and Jack L. Doe, are the minor sons of plaintiff Mary Doe.  At all relevant times the boys were students at schools operated by the Lamoille South Supervisory Union School District and/or the Morristown School District in Morrisville, Vermont.  The boys attended Morristown Elementary School, Peoples Academy Middle School, and Peoples Academy High School.  The Doe family resides in Lamoille County.  The use of the Doe names is to protect the privacy of the minor children.  The defendant knows their actual identities.

1

2.   The defendants, Lamoille South Supervisory Union (LSSU), and the Morristown School District, are the recipients of federal monies and are thereby subject to the requirements of 20 U.S.C. §1681, otherwise known as Title IX.

3.   Shaun Bryer, at all times relevant to the allegations contained in this complaint, was a teacher and employee of Morristown School District and/or LSSU.

4.   Frederika French was the principal of the Morristown Elementary School while Shaun Bryer taught there.  She was an employee of the Morristown School District.

5.   Alice Agney was the Superintendent of LSSU and chief executive officer for both LSSU and Morristown School District on and after September, 2003 through at least July 1, 2007, and during earlier years as well.

6.   Tracy Wrend was the Superintendent of LSSU on and after July 1, 2007 through the present.  She was the chief executive officer for both LSSU and Morristown School District.

7.   Both Agney and Wrend were CEO's of the two school districts by virtue of Vermont State Law, 16 V.S.A., 241.  Also, Vermont law gave them the authority to dismiss Shaun Bryer, subject to procedural, contractual, or other requirements of law.  16 V.S.A. §242(3)(c).

8.   Shaun Bryer sexually harassed, molested, and assaulted both boys while he was employed by the Morristown School District as a teacher at Morristown Elementary School and the People's Academy Middle School.

9.   Shaun Bryer's sexual abuse of the two boys occurred on repeated occasions in each school year starting sometime in early 2005 and ending with Bryer's arrest in September 2009.

10.   During the entire period that the sexual abuse was occurring, Frederika French, Alice Agney, and/or Tracy Wrend had been invested by state law, the Morristown School

2

District, and LSSU with supervisory power over Shaun Bryer. They had the power to end the abuse, and failed to do so.

11. Principal French and Superintendents Agney and Wrend knew of Bryer's inappropriate relationship with the boys, knew their older brother accused him of molesting the boys, knew that he spent time alone with the boys in his apartment and in their home and knew that he was sexually harassing them. They knew that Bryer posed a substantial risk to sexually harass and abuse the boys.

12. Principal French and Superintendents Agney and Wrend repeatedly told Bryer not to socialize with the boys outside of school, not to give them undue attention and not to engage in inappropriate behavior. They provided written warnings to this effect in 2005 and 2008. They knew Bryer ignored their warnings.

13. Based upon their brother's statement that Bryer was molesting the boys, Superintendent Agney told Bryer in December of 2005, that she would report him to the Division of Children and Families if he did not stop his inappropriate behavior with the boys. At that time, because of the accusations and her knowledge of his conduct, she asked Bryer if he was homosexual.

14. Superindentent Wrend warned Bryer in May of 2008, and again by letter in November 2008 to stop his relationship with the boys. He refused. Wrend took no further action until March of 2009.

15. At no time over this four year period of abuse did the defendant advise Mary Doe of their concerns about Bryer's inappropriate relationship with her sons and warn her of the risks that Bryer posed to her children.

3

16.   The years of sexual abuse seriously interfered with the boys' education and destroyed their ability to have a positive and successful educational experience in the defendant's school system.

17.   The boys have suffered permanent, severe, emotional and psychological damage as a result of the sexual abuse.

18.     Mary Doe has incurred expenses for her sons' care and treatment as a result of the defendant's actions.  She has suffered emotionally as well.

## II.     Legal Claims

### A.    Title IX

19.   The failure of French, Agney, and Wrend to take timely and reasonable measures to stop the sexual abuse and harassment of the minor plaintiffs is actionable under Title IX.

20.   The plaintiffs were subjected to a hostile educational environment of sexual harassment.  They were subjected to unwelcome sexual advances, requests for sexual favors, and verbal and physical conduct of a sexual nature, including sexual assault, over a number of years. The behavior of Shaun Bryer was sufficiently severe and pervasive as to create an abusive educational environment.

21.   The defendants are the recipients of federal educational funds.

22.   A supervisory school official had actual knowledge of the substantial risk of sexual abuse, inappropriate physical contact and sexual harassment of the minor plaintiffs such that she could have reasonably responded with remedial measures to address the ongoing abuse and harassment but failed to do so.

23.   Agney, French, and Wrend were deliberately indifferent to the sexually harassing and abusive behavior of Bryer and the minor plaintiffs' victimization.

4

**B. Vermont Public Accommodations Act (VPAA)**

24. The defendant's conduct is also actionable under 9 V.S.A. § §4500 – 4507, the Vermont Public Accommodations Act.

25. The sexual abuse by Bryer was so severe, pervasive, and offensive, that it deprived the minor plaintiffs of access to educational opportunities and benefits provided by their school.

26. The minor plaintiffs were 6th – 9th grade students being sexually abused and assaulted by a teacher without the knowledge of their parents. As such they are excused from any requirement that they exhaust administrative remedies. Any complaints by the boys would have jeopardized their health and safety and subjected them to substantial and imminent retaliation.

**C. Negligence**

27. The actions of Principal French and Superintendents Agney and Wrend in failing to take reasonable actions to protect the boys from the foreseeable harm of sexual abuse and exploitation were negligent.

28. More specifically:

   a) In the school year 2004-2005, Principal French and Superintendent Agney were negligent in failing to take reasonable disciplinary measures to protect the minor plaintiffs. Bryer was warned in December 2004 about his inappropriate behavior with the students and was given directives regarding his relationships with children. Thereafter, his relationship with the minor plaintiff's violated those directives. He was given a written reprimand

5

relating to his behavior with the minor plaintiffs reiterating the directives in
April 2005. He did not change his behavior and neither Agney nor French
took action against him or warned the boys' parents.

b) In the school year 2005-2006, Bryer's contact with the boys continued. He
slept at their home, had them visit his apartment, and spent inordinate
amounts of time with them both in and out of school. In December 2005, the
boys' older brother accused Bryer of molesting his younger brothers while
Bryer was babysitting in their home. Bryer admitted to violating the
directives. Agney and French gave Bryer another written warning, but
took no other action. Neither French nor Agney advised the boys' parents of
their concern. Bryer continued his close relationship with the boys, blatantly
ignoring Agney's warning and instructions. She did nothing.

c) In the school year 2006-2007, Bryer's inappropriate relationship with the
minor plaintiffs continued. He was abusing the children and, despite the
knowledge of Agney, French, and Wrend, no action was taken.

d) In the school year 2007-2008, Bryer's conduct and relationship
continued. Wrend was aware of his behavior and the prior written
warnings. It was not until April or May 2008 that she told him to end
his close personal relationship. Bryer ignored her and she did nothing.
She did not warn the parents of her concerns.

e) In the school year 2008-2009, Wrend told Bryer to end his relationship
with the minor plaintiffs and gave him another detailed letter in November
2008, which he ignored. In March 2009, he was suspended from teaching

and in April 2009, Bryer reached an agreement with the defendant which sealed his records and allowed him to be hired as a teacher by the Town of Colchester. The defendant never informed the plaintiff Mary Doe or the Colchester School District why Bryer was leaving LSSU. Bryer continued his abuse of the boys until his arrest in September 2009.

29.     As a direct and proximate result of the negligence of French, Agney and Wrend, the minor plaintiffs suffered severe and permanent psychological harm and emotional distress.

30.     Agney, French, and Wrend had a duty to warn Mary Doe of the risk that Bryer presented to her children. Agney, French and Wrend negligently failed to warn Mary Doe of the risk. As a direct and proximate result of the negligence of French, Agney, and Wrend, her children were repeatedly sexually molested in her home and elsewhere causing her to incur costs for their care and treatment and sustain other financial loss, and to suffer severe emotional distress.

31.     24 V.S.A. § 901(a) precludes the filing of a civil action for negligence against municipal employees and requires that claims of negligence against such employees be brought in the name of the municipality that employs them. The defense of sovereign immunity is not available under 24 V.S.A. § 901(c).

WHEREFORE, the plaintiffs seek reasonable damages and attorneys' fees as allowed by Title IX and the VPAA.

Dated at Barre, Vermont, this 27 day of June, 2012.

Joe E. Doe and Jack L. Doe
by their next friend Mary Doe
and Mary Doe

By: _____
Richard I. Rubin, Esq.
Rubin, Kidney, Myer & DeWolfe
237 North Main St.
Barre, VT  05641
(802) 479-2514

s/ _____
Kerry B. DeWolfe, Esq.
Rubin, Kidney, Myer & DeWolfe
237 North Main St.
Barre, VT  05641
(802) 479-2514

## DEMAND FOR JURY TRIAL

The plaintiffs request a TRIAL BY JURY.

Dated at Barre, Vermont this 27 day of June, 2012.

Joe E. Doe and Jack L. Doe
by their next friend Mary Doe,
and Mary Doe

By: _____
Richard I. Rubin, Esq.

By: _____
Kerry B. DeWolfe, Esq.

**CERTIFICATE OF SERVICE**

I hereby certify that on this day a
true copy of the above document was
served upon the attorney of record
for each party by mail by hand.
Date: _____ 6/27/12
         Signature

Cc:   Pietro Lynn, Esq.

8